**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 31 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

RAYMOND CHARLES PERSIK,

Plaintiff-Appellant,

v.

MANPOWER INC.,

Defendant-Appellee.

No. 03-1116
(D.C. No. 02-WM-1703 (MJW))
(D. Colo.)

ORDER AND JUDGMENT *

Before **O'BRIEN** and **BALDOCK** , Circuit Judges, and **BRORBY** , Senior Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Raymond Charles Persik appeals from the district court's dismissal of his employment discrimination complaint, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. We affirm.

FACTS

In his complaint, Persik alleges that the defendant, Manpower Inc. (Manpower), unlawfully discriminated against him based on his sex, religion, and his "Religious/Political Pro Life view." R., Doc. 1 at 2. Manpower is a temporary agency that places employees with employers who contract for temporary labor. It employed Persik as a temporary employee.

Persik asserts that the first incident of discrimination occurred on March 27, 2000, during a job assignment arranged by the Manpower office in Boulder, Colorado. He alleges that a Manpower representative contacted him and asked if he was experiencing emotional problems. R., Doc. 1 at 3. On April 24, 2000, Persik was prematurely released from a Manpower assignment through the Boulder office at the University of Colorado. He alleges that this termination occurred due to discrimination rather than the reason given, his failure to follow directions.

Persik claims he was unable to obtain employment through Manpower during the summer of 2000. _Id._, Attach. 1 at 1 (Charge of Discrimination). Apparently, he is referring only to the Boulder branch office, for on July 5, 2000,

Persik states he again worked for Manpower at an assignment arranged by the Louisville, Colorado branch office and "had an excellent assignment." *Id.* at 2. In December 2000, Persik also worked out of the Manpower office in Carlisle, Pennsylvania. He alleges no discriminatory incident in this assignment. The last incident of discrimination purportedly took place on July 27, 2001, when Persik received a letter from Manpower's corporate headquarters, indicating that it stood by the decision reached by the Boulder branch office in April 24, 2000 to terminate his employment. *Id.*[1]

Persik filed a charge of discrimination complaining of these practices with the Equal Employment Opportunity Commission (EEOC) on January 22, 2002. *Id.* at 2. The district court dismissed Persik's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), because his complaint showed that his EEOC charge had not been timely filed. A Title VII plaintiff must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). A claim is time-barred if the charge is not filed within this time limit. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Discrete discriminatory acts, such as those Persik alleges here,

---

[1] Persik also alleges retaliation by "an unknown party" on December 22, 2000. R., Doc. 1 at 5. Not only is this alleged incident outside the 300-day window, it fails to state a claim for relief because there is no indication in the complaint that this unknown party had anything to do with Manpower.

"occur" on the day they "happen." *Id.* at 110. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113.

The only alleged act of discrimination that occurred within 300 days of the date on which Persik filed his EEOC charge was the July 27, 2001 letter from Manpower's headquarters. The district court concluded that this letter merely ratified Persik's earlier termination, and therefore did not re-start the 300-day clock.

## STANDARD OF REVIEW

We review the district court's dismissal de novo. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). We construe the allegations of Persik's pro se complaint liberally, upholding the dismissal only if it is obvious that he cannot prevail on the facts as alleged and that it would be futile to allow him to amend his complaint. *Id.*

Persik's pro se complaint was submitted on a standard form and contains very few supporting factual allegations or details. He attached a large number of documents as exhibits to his complaint, however, which spell out the nature of the alleged discriminatory incidents. These became part of the complaint for purposes of the district court's determination of Manpower's motion to dismiss, *see id.,* and consequently are included in our review of the order of dismissal.

ANALYSIS

Our review is complicated by the fact that Persik did not file a response to Manpower's motion to dismiss. The district court noted Persik's failure to respond, and after analyzing the timeliness issue, deemed Persik's lack of response a concession of Manpower's arguments. R., Doc. 15 at 4. We recently outlined the procedures to be followed when a pro se litigant fails to comply with local rules requiring a response to a motion to dismiss his complaint. *Issa v. Comp USA*, No. 03-4024, 2003 WL 23010402 (10th Cir. Dec. 24, 2003). A district court may not grant a 12(b)(6) dismissal based solely on the plaintiff's failure to respond. *Id.*, slip op. at 5. Instead, it "must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Id.* at 5-6.

We are satisfied that the district court's order in this case satisfies these procedural requirements. Prior to deeming Persik's lack of response a concession of Manpower's motion to dismiss, the district court stated the following conclusions concerning the issues raised in the motion:

> Plaintiff learned of his termination on or before April 24, 2000. He failed to file a charge with the EEOC within three hundred days of this date. The July 26, 2001 letter informing plaintiff that Manpower would not reverse its April 24, 2000 decision to terminate him did not constitute a fresh act of discrimination for purposes of the EEOC filing.

R., Doc. 15 at 4.

The district court sufficiently analyzed the reasons that Persik's complaint fails to state a claim. Upon de novo review, we further conclude that the district court's analysis of the timeliness issue was correct. The limitations period for filing an EEOC charge begins running when the employee is notified of the employment decision. *Del. State Coll. v. Ricks*, 449 U.S. 250, 259 (1980). "[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Id.* at 261. Persik, however, raises three arguments designed to show that different dates apply to the start of the 300-day period, or to the date his charge was filed.

1. **Effect of March 22, 2001 conversation**

In his complaint, Persik admits that he was dismissed on April 24, 2000. He claims, however, that he did not have notice of two essential facts until much later: (1) that the dismissal had been effectuated by *Manpower* (rather than the University of Colorado); and (2) that the dismissal meant the Boulder, Colorado Manpower office would no longer consider him for temporary assignments at *other* job sites. He claims he was not aware of these facts until he spoke with a staffing specialist in the Boulder Manpower office, on March 22, 2001. *See* R., Doc. 1, Attach. 1 at 1 (Charge of Discrimination) ("On or about March 22,

2001, I was told by one of the [Manpower] Staffing Specialists that the company had intended to release me on April 24, 2000.").

There is no indication that Persik was unaware of the essential facts surrounding his claim at the time he was released from employment in April 2000. Even if we were to use this March 22, 2001 conversation as the notification date, however, it also was outside the 300-day window and Persik's charge was still untimely. We therefore reject this argument.

2. **Effect of July 26, 2001 letter**

Persik contends that the July 26, 2001 letter he received from Manpower's corporate headquarters should be used as the final date of discrimination. He argues that the April 2000 decision was not final because he was permitted to accept assignments from Manpower branches in other locations between his April 2000 termination and the time the July 2001 letter was issued. Aplt. Opening Br. at 17. The mere fact that Persik continued working for Manpower at other branches, however, did not extend his time to file a charge. "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Ricks*, 449 U.S. at 257.

Nor can we accept Persik's argument that Manpower's letter of July 26, 2001 was a new act of discrimination because, unlike the earlier decision, it cut off his opportunities to obtain assignments from *all* branches of Manpower.

Nothing in the July 26, 2001 letter states that Persik may not seek employment with Manpower in other locations besides the Boulder branch. Persik's complaint itself does not allege that the letter prevented him from seeking employment with other branches of Manpower. Persik's letter to Manpower dated July 3, 2001, which prompted the letter of July 26, 2001, is addressed solely to a supervisor at the Boulder branch, and refers to resolution of "employment discrimination that occurred through *your office* of [Manpower]." R., Doc. 1, Attach. 15 at 1 (Letter of July 3, 2001) (emphasis added). Persik further stated in this letter that he believed it was not necessary to provide him with a letter of permission to work at other Manpower offices in the future. *Id.* at 3.

### 3. **Effect of EEOC questionnaire**

Finally, Persik argues that we should use the date of his EEOC questionnaire, rather than the EEOC charge, to calculate the 300-day period, because he eventually filed a proper charge. If the date of the questionnaire were used as the filing date, Persik's EEOC filing would be timely. A defective charge filed during the 300-day period may be amended outside the period to cure technical defects or omissions. *See* 29 C.F.R. § 1601.12(b); *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 109, 110 n.2 (2002). This relation-back principle, however, applies only where the earlier filing actually operates as a charge.

*Cf. id.* at 118-19 (reserving issue of whether plaintiff and EEOC intended letter filed within 300-day period to be treated as charge).

Here, the questionnaire warned Persik, in two different places, in capital letters, that "COMPLETING THIS QUESTIONNAIRE DOES NOT CONSTITUTE THE FILING OF A CHARGE." R., Doc. 1, Attach. 3 at 1, 7. Persik's March 2, 2001 correspondence with the EEOC indicates that he did not believe that the questionnaire he had previously completed was intended to operate as a charge. *Id.*, Attach. 6 (letter of March 2, 2001). He reaffirms this position in his reply brief on appeal. Aplt. Reply Br. at 8. Under the circumstances, the charge he eventually filed did not relate back to the date of the questionnaire.

CONCLUSION

The district court correctly concluded in this case that Persik did not file an EEOC charge within 300 days of the last discrete act of discrimination alleged in his complaint. It therefore properly dismissed his complaint for failure to state a claim. The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge